**TAMUNO IFIESIMAMA and Tamunnoibuomi Ifiesimama, Appellants**

v.

**Daniel A. HAILE and Wongelawit K. Alemu, Appellees**

**NO. 01–15–00829–CV**

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued March 30, 2017

Rehearing and Rehearing En Banc Overruled June 27, 2017

676

Amen Omo. Obas, SBN: 24034605, AMEN LAW FIRM, 9525 Bissonnet Street, Suite 280, Houston, TX, Appellants.

Derek Deyon, SBN: 24075862, THE DEYON LAW GROUP, PPLC, 2211 Norfolk St., Ste 600, Houston, TX, for Appellees.

Panel consists of Justices Keyes, Higley, and Lloyd.

## OPINION

Evelyn V. Keyes, Justice

After their attempt to purchase a home was unsuccessful, appellees Daniel A.

Haile and Wongelawit K. Alemu sued appellants Tamuno Ifiesimama ("Mr. Ifiesimama") and Tamunnoibuomi Ifiesimama ("Mrs. Ifiesimama"), for specific performance and breach of contract. The trial court held a bench trial and ultimately ruled in favor of Haile and Alemu, ordering that they recover costs, their earnest money deposit, and attorney's fees from both Ifiesimamas, although only Mr. Ifiesimama signed the sales contract. The court ordered specific performance, requiring conveyance of the subject ·property to Haile and Alemu.

In seven issues, the Ifiesimamas argue that: (1) the trial court erred by finding that Mr. Ifiesimama made a misrepresentation to Haile and Alemu; (2) the trial court erred in rendering judgment against Mrs. Ifiesimama despite finding on the record that she was not a party to the contract to sell the property; (3) the trial court incorrectly awarded judgment against the Ifiesimamas jointly and severally because Haile's and Alemu's pleadings did not request this relief; (4) factually insufficient evidence supports the trial court's finding that both Ifiesimamas agreed to sell the property for $179,000; (5) the agreement between the parties violated the statute of frauds; (6) factually insufficient evidence supports the trial court's findings that the Ifiesimamas breached the contract and that Haile and Alemu tendered performance; and (7) the trial court erred in granting specific performance and in awarding earnest money and attorney's fees to Haile and Alemu.

We modify the judgment of· the trial court and affirm as modified.

## Background ·

In 2013, the Ifiesimamas, who are husband and wife, decided to· sell their home in Stafford, Texas. However, nothing in the record shows that Mrs. Ifiesimama had an interest in the property. Rather, the evidence shows that all documents relating to the property were in Mr. Ifiesimama's name and that Mrs. Ifiesimama waived any right she may have had to the property via a community property interest by signing such a waiver in the deed of trust when the Ifiesimamas mortgaged the property.

On May 29, 2013, Haile and Alemu made an offer to purchase the property for $193,000. Mr. Ifiesimama signed the sales contract on June 5, 2013, and the contract set the closing date for July 19, 2013. The sales contract included the following default provision: "If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract."

The parties also executed an "Intermediary Relationship Notice," which identified both Tamuno and Tamuinnoibuomi Ifiesimama as the sellers and Haile and Alemu as the "prospect," or prospective buyers. In this document, the parties agreed that agent Adnew "Eddie" Tadesse with the firm Realty Associates would represent both parties during the transaction. Both Haile and Alemu signed this agreement, as did Mr. Ifiesimama. Mrs. Ifiesimama did not sign this agreement, nor did she sign the sales contract. The "Intermediary Relationship Notice" is the only document in the record that indicates that Mrs. Ifiesimama had any interest in the property.

On July 9, 2013, after an appraiser valued the property at $179,000, $14,000 below the original purchase price, Haile and Alemu sought to amend the sales contract to change the purchase price to $179,000 and to move the closing date to July 30,

2013. Both Haile and Alemu signed a document amending the contract, and a signature appeared above the printed name of Tamuno Ifiesimama. Mr. Ifiesimama later argued, during the course of this litigation, that he never signed this document and that this signature was a forgery. Mrs. Ifiesimama's name was not listed on the amendment, and she did not sign this document.

Haile, Alemu, and Mr. Ifiesimama all attended the closing and signed numerous documents to finalize the transaction. Mr. Ifiesimama signed the documents both in his own name and as "attorney in fact" for his wife. However, he later revealed at the closing that he did not actually have power of attorney for his wife, and as a result, the title company refused to close the sale. Haile and Alemu therefore did not receive title to the property.

In September 2013, Haile filed suit against both of the Ifiesimamas, seeking specific performance of the sales contract as well as injunctive relief prohibiting the Ifiesimamas from selling the property to another buyer. Haile also sought the recovery of attorney's fees. Alemu later filed a petition in intervention, making identical allegations and seeking identical relief.

The Ifiesimamas filed a counterclaim against Haile. They alleged that Haile filed suit against them "knowing fully well that [the Ifiesimamas] never at anytime made misrepresentation[s] or entered into the said agreement as claimed by [Haile]." They also alleged that Haile brought suit and filed a lien against the property "knowing fully well that there was no basis in law or fact for doing so."

Haile and Alemu amended their respective petitions to allege that when the subject property was purchased in 2005, the original deed of trust listed Mr. Ifiesimama, the only named borrower, as a married man. On one page of that document,

Mrs. Ifiesimama "executed an agreement waiving all rights and interests in the property, including marital, homestead, and joint-occupancy rights." Haile and Alemu alleged that, with respect to their transaction with the Ifiesimamas, "Defendant Tamuno signed the closing documents, but refused to further close and sell the property."

On the day of trial, Haile and Alemu sought leave to supplement their petitions to add an alternative cause of action for breach of contract against Mr. Ifiesimama. Haile and Alemu alleged that they entered into a valid contract with Mr. Ifiesimama to purchase the subject property, that they performed their obligations under the sales contract by paying closing costs, and that Mr. Ifiesimama breached the contract by failing to convey title to the property. Haile and Alemu did not allege that Mrs. Ifiesimama breached a contract with them. The trial court permitted Haile and Alemu to supplement their petitions.

At trial, Alemu testified that while the sale was pending, she and Haile dealt solely with the agent, Eddie Tadesse, and they did not personally speak with the Ifiesimamas. Alemu identified the sales contract and testified that it was signed by three people, Mr. Ifiesimama as the seller, Haile, and herself. The amendment to the sales contract provided that the sales price of the property was $179,000, and Alemu testified that this was the amount that Mr. Ifiesimama agreed to accept from her and Haile. Alemu stated that she and Haile paid the required earnest money deposit and that they paid closing costs on the closing date. She testified that Mr. Ifiesimama attended the closing, that he stated that he had authority to sell the property on his wife's behalf, and that he signed numerous documents, including a settlement statement and a general warranty

deed,[1] in his own name and as "attorney in fact" on behalf of his wife. She stated that despite this, she and Haile did not receive title to the property and did not take possession of the property.

Alemu further testified that, at the time of closing, she and Haile did not realize that Mr. Ifiesimama had no authority to sign any documents on behalf of his wife. Mr. Ifiesimama told them that he was going to bring a power of attorney to the title company later that afternoon, but he did not bring it, and then Alemu and Haile learned that he did not have power of attorney for his wife. Alemu stated that she and Haile were unable to purchase the property because of the title company's insistence that Mr. Ifiesimama did not have authority to sell the property on behalf of his wife.

On cross-examination, Alemu testified that the sales contract had an original purchase price of $193,000, and that she and Haile signed the contract on May 29, 2013. Mr. Ifiesimama was out of the country at the time, and he did not sign the contract until several days later. Alemu did not know that Mrs. Ifiesimama's name or a place for her signature was ever on the sales contract. She did not agree with the Ifiesimamas' counsel that Mrs. Ifiesimama's name was once on the sales contract but had been removed from the copy of the contract that the trial court admitted into evidence. Alemu stated that her understanding was that both Ifiesimamas were going to come to the closing, but when only Mr. Ifiesimama appeared on the day of the closing, he said that he had his wife's power of attorney. When he was unable to present a power of attorney, the title company refused to close the sale. Alemu also testified that they amended the

contract to change the purchase price from $193,000 to $179,000 after the property appraised at $179,000 and their lender required them to offer a lower price. She testified that Mr. Ifiesimama accepted the amended purchase price, stating, "[t]hat's why he came for the closing day."

The trial court admitted a copy of the deed of trust signed by Mr. Ifiesimama when he purchased the property in 2005. This document included a page signed by Mrs. Ifiesimama that stated, "By signing below, the undersign[ed] encumbers, subordinates, conveys, and/or waives any and all rights, interests or claims in the property, including, but not limited to, homestead, dower, marital or joint-occupancy rights." Every page of the deed of trust, including the above page, was initialed by both of the Ifiesimamas. The trial court also admitted copies of Fort Bend County Appraisal District records for the property that listed only Mr. Ifiesimama as the owner of the property. These records showed that Mr. Ifiesimama owned 100% of the property. Neither party introduced a copy of the deed the Ifiesimamas received when the property was purchased in 2005.

Mr. Ifiesimama agreed that he failed to close on the sales contract, and when asked by Haile and Alemu's counsel why that was, he stated that he told Tadesse, the parties' agent, that his wife did not agree to sell the house, but Tadesse promised him that that was not a problem and that he could come to the closing and close the sale by himself. Mr. Ifiesimama stated that his wife decided that she did not want to sell the house after the appraiser valued the property at $179,000 and Haile and Alemu lowered their offer. He testified that he did not tell anyone that he had a

---

1. The trial court admitted these documents as Plaintiff's Exhibit 2. The settlement statement, signed by Haile, Alemu, and Mr. Ifiesimama in his own capacity and as "attorney in fact" for his wife, reflected a purchase price of $179,000.

power of attorney for his wife and that he did not have her power of attorney. He acknowledged that he signed documents at closing in his own name and as attorney in fact for his wife, although he testified that Tadesse told him to sign for his wife. Mr. Ifiesimama testified that Tadesse pushed him to go through with the sale so Tadesse could collect his commission. He also testified that his wife's name had been removed from the contract that was entered into evidence.

Haile and Alemu's counsel, Derek Deyon, testified concerning attorney's fees. Deyon stated that the sales contract allowed for the recovery of attorney's fees in case of a breach. He also testified that he charged $250 per hour and that he had worked sixty-five hours on the case, for a total of $16,250. He did not introduce any billing records.

On cross-examination, Deyon acknowledged that Haile and Alemu were not suing Mrs. Ifiesimama for monetary damages, only Mr. Ifiesimama. He testified:

[The attorney's fees are] for prosecuting only against Mr. Ifiesimama. Mrs. Ifiesimama is just specific performance which is an equitable remedy. We couldn't get monetary damages, and it's also defending against the sanctions that you filed against my clients for filing—you said it was a frivolous lawsuit and slander of title. You guys have counterclaims. I have to defend against both clients. So it's defense against both but prosecution against one.

Deyon estimated that approximately seventy-five percent of the attorney's fees related to prosecuting Haile and Alemu's affirmative claims and twenty-five percent related to defending against the Ifiesimamas' claims. Deyon testified that he was seeking $16,250 in attorney's fees, that he had already been paid $7,500, that seventy-five percent of the fees related to plaintiffs' work, that twenty-five percent related to defense work, and that he was not seeking the percentage of fees relating to defending against the claim brought by Mrs. Ifiesimama.

The Ifiesimamas called Adnew "Eddie" Tadesse as a witness. He testified that he was supposed to receive approximately $10,000 as a commission if the sale closed. He agreed that Mr. Ifiesimama did not sign the sales contract on his wife's behalf and that he did not receive a power of attorney from Mrs. Ifiesimama during the course of this transaction. He testified that he did not alter the sales contract to remove Mrs. Ifiesimama's name. He also agreed that he told Haile and Alemu that Mr. Ifiesimama would close the transaction without his wife "because of the power of attorney." Tadesse testified that when he had worked on real estate transactions with the Ifiesimamas in the past, Mrs. Ifiesimama had signed a power of attorney, but she did not in this instance.

At the close of the parties' cases-in-chief, the trial court found in favor of Haile and Alemu and ruled that there was a breach of contract. The trial reconvened the next day for the court to hear evidence of damages. Before testimony began, the Ifiesimamas' counsel had the following exchange with the trial court:

[Counsel]: I don't know if you could clarify your judgment. You said there was a contract and the contract was breached?

The Court: Yes.

[Counsel]: Who were the contracts with?

The Court: I find that the contract existed between Mr. Tamuno Ifiesimama, and that he represented to Daniel Haile and Wongelawit Alemu that he had authority to sign for his wife, Tamunnoibuomi Ifiesimama, and,

therefore, there was a contract for the sale of a home. Those are my findings. And that that contract was breached when the house failed to close as a result of not fulfilling his promise of selling the home.

[Counsel]: What about for Mrs. Ifiesimama?

The Court: Well, she did not enter the contract, to my knowledge, so I'm only finding as to Mr. Tamuno Ifiesimama violated the contract. However, because of his misrepresentations, that's an issue they're going to have to resolve with each other as far as the community property goes. But I do find that there was a valid contract that was entered into that Mr. Haile and Ms. Alemu relied upon and acted upon, and that contract was breached.

Haile testified that he and Alemu incurred a total of $495 in court costs and that they paid $1,000 in earnest money that was not refunded to them when the sale failed to close. At the close of the trial, the court ordered specific performance of the sales contract and awarded Haile and Alemu costs and $16,250 in attorney's fees.

The trial court included in its written judgment a finding that Haile and Alemu established their cause of action for specific performance. The trial court ordered the Ifiesimamas to pay a total of $495 in court costs, $1,000 in earnest money, and $16,250 in attorney's fees. The trial court also ordered the Ifiesimamas to sell the property to Haile and Alemu. The trial court rendered judgment against both Mr. and Mrs. Ifiesimama.

The Ifiesimamas requested that the trial court file written findings of fact and conclusions of law. Among other things, the trial court found that Mr. Ifiesimama signed a contract for sale of the property, agreed that he would execute and deliver a general warranty deed to Haile and Ale-

mu, and signed an amendment to the contract lowering the purchase price to $179,000. The trial court found that Haile and Alemu fully performed the sales contract by paying $1,000 in earnest money, securing financing, and paying all closing costs. The court found that Mr. Ifiesimama failed to convey a warranty deed and concluded that this failure constituted a breach of the sales contract. The court further concluded that Haile and Alemu were entitled to specific performance of the amended sales contract as a result of Mr. Ifiesimama's breach.

The Ifiesimamas also moved for a new trial, but this motion was overruled by operation of law. This appeal followed.

## Sufficiency of the Evidence

In their first issue, the Ifiesimamas argue that the trial court erred in finding that Mr. Ifiesimama misrepresented to Haile and Alemu that he had authority to sell the property on behalf of his wife. In their fourth issue, the Ifiesimamas argue that there is not factually sufficient evidence to support the trial court's award of specific performance when neither of them signed the amended sales contract lowering the purchase price to $179,000. And in their sixth issue, the Ifiesimamas argue that there is not factually sufficient evidence to support a finding that they breached the contract or that Haile and Alemu tendered performance.

### A. Standard of Review

 In an appeal from a bench trial, we review a trial court's findings of fact under the same sufficiency of evidence standards used when determining whether sufficient evidence exists to support a jury finding. *See Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex. 1994). In a factual sufficiency review, we consider and weigh all of the evidence. *See Cain v. Bain,* 709

S.W.2d 175, 176 (Tex. 1986) (per curiam); *Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 468 (Tex. App.–Houston [1st Dist.] 2007, pet. denied). When appellants challenge an adverse finding on an issue on which they did not have the burden of proof at trial, we set aside the verdict only if the evidence supporting the finding is so weak as to make the verdict clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176; *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 782 (Tex. App.–Houston [1st Dist.] 2011, no pet.).

In a bench trial, the trial court evaluates the credibility of the witnesses, determines the weight of the testimony, and resolves conflicts and inconsistencies in the testimony. *Merry Homes, Inc. v. Chi Hung Luu*, 312 S.W.3d 938, 943 (Tex. App.–Houston [1st Dist.] 2010, no pet.). As long as the evidence presented at trial falls "within the zone of reasonable disagreement," we will not substitute our judgment for that of the fact finder. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

### B. Finding of Misrepresentation

In their first issue, the Ifiesimamas argue that the trial court erred by orally finding on the record that Mr. Ifiesimama misrepresented to Haile and Alemu that he had authority to sign documents and sell the property on behalf of his wife. Specifically, they argue that there is no evidence that Mr. Ifiesimama ever made such a misrepresentation and that the evidence instead reflects that Haile and Alemu dealt solely with the agent Tadesse and never spoke with Mr. Ifiesimama.

A trial court's oral statements at trial are not findings of fact or conclusions of law. *Seasha Pools, Inc. v. Hardister*, 391 S.W.3d 635, 640 (Tex. App.–Austin 2012, no pet.); *see also In re Doe 10*, 78 S.W.3d 338, 340 n.2 (Tex. 2002) ("Oral comments from the bench are not written findings of fact."); *Intec. Sys., Inc. v. Lowrey*, 230 S.W.3d 913, 918 (Tex. App.–Dallas 2007, no pet.) ("A court's oral statements 'cannot substitute' for findings and conclusions."); *Cty. of Dallas v. Poston*, 104 S.W.3d 719, 722 (Tex. App.–Dallas 2003, no pet.) ("A trial court's oral comments following a bench trial may not be substituted for a written finding of fact. Thus, we may not look to such comments to determine the basis for the trial court's ruling."). "Statements made by a trial court outside of properly filed written findings and conclusions do not limit an appellate court's review." *Larry F. Smith, Inc. v. Weber Co.*, 110 S.W.3d 611, 615 (Tex. App.–Dallas 2003, pet. denied). Furthermore, in civil cases, when a trial court's oral pronouncement conflicts with a written judgment, the written judgment prevails. *Seasha Pools*, 391 S.W.3d at 640.

Here, the trial court stated: "I find that the contract existed between Mr. Tamuno Ifiesimama, and that he represented to Daniel Haile and Wongelawit Alemu that he had authority to sign for his wife, Tamunnoibuomi Ifiesimama, and, therefore, there was a contract for the sale of a home." The Ifiesimamas challenge this finding on appeal, arguing that Mr. Ifiesimama never spoke to Haile and Alemu and thus never made any misrepresentations to them. After the trial court signed its written judgment, in which it made no mention of any misrepresentations, but instead found only that Haile and Alemu established their right to specific performance, the Ifiesimamas requested that the trial court file written findings of fact and conclusions of law, which the court did. As in the written judgment, the trial court made no findings that Mr. Ifiesimama made any misrepresentations to Haile and Alemu. Instead, the trial court found that

Mr. Ifiesimama failed to convey a general warranty deed to Haile and Alemu and concluded that this failure constituted a breach of contract entitling Haile and Alemu to specific performance.

The trial court's oral statement on the record regarding Mr. Ifiesimama's misrepresenting to Haile and Alemu that he had authority to sign documents on behalf of his wife does not substitute for a written finding of fact. *See id.*; *Intec Sys.*, 230 S.W.3d at 918. The trial court made written findings of fact, but it did not make any findings concerning misrepresentations made by Mr. Ifiesimama to Haile and Alemu. Thus, in determining the basis for the trial court's ruling, we do not consider the court's oral statement regarding Mr. Ifiesimama's alleged misrepresentations. *See Poston*, 104 S.W.3d at 722. We therefore hold that even if the Ifiesimamas are correct that the trial court's oral statement is not supported by the record, a matter we need not determine, this oral statement was not a basis for the trial court's judgment and may not be considered on appeal.

We overrule the Ifiesimamas' first issue.

## C. Breach of Contract and Specific Performance

■■■ In their fourth issue, the Ifiesimamas argue that there is not factually sufficient evidence to support the trial court's award of specific performance when neither of them signed the amended contract lowering the purchase price of the property to $179,000. And in their sixth issue, the Ifiesimamas argue that there is not factually sufficient evidence to support a finding that they breached the contract or that Haile and Alemu tendered performance.

■■■ The essential elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.–Houston [1st Dist.] 2009, pet. denied). A breach of contract occurs when a party to the contract fails or refuses to do something that he has promised to do. *Id.* (quoting *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.–Houston [14th Dist.] 2006, pet. denied)). Whether a contract has been modified depends on the parties' intentions and is a question of fact. *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 702 (Tex. App.–Dallas 2008, no pet.). The party asserting modification bears the burden of proving the modification. *Id.* "A contract modification must satisfy the traditional requirements of a contract—there must be a meeting of the minds supported by consideration." *Id.*

■■■ Specific performance is an equitable remedy that may be awarded upon a showing of breach of contract. *Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.–Dallas 2007, pet. denied). Specific performance is not a separate cause of action but is instead an equitable remedy that is used as a substitute for monetary damages when such damages would not be adequate. *Id.* "[T]o be entitled to specific performance, the plaintiff must show that it has substantially performed its part of the contract, and that it is able to continue performing its part of the agreement. The plaintiff's burden of proving readiness, willingness and ability is a continuing one that extends to all times relevant to the contract and thereafter." *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 594 (Tex. 2008). The party seeking specific performance must show that he has complied with his obligations under the contract. *Id.* Thus, as a general rule, the party seeking specific performance

must actually tender performance as a prerequisite to obtaining this remedy. *Id.*

The Ifiesimamas argue that there was not a meeting of the minds to sell the property at the amended price of $179,000 and that neither of them signed the document purportedly amending the sales contract. They argue that the signature that appears above Mr. Ifiesimama's name on the amendment is fictitious, and they point out that this signature is different from his signature on the original sales contract.

There is no dispute that Mr. Ifiesimama signed the original contract to sell the property for $193,000 on June 5, 2013, and that Mrs. Ifiesimama did not sign this document or any other document relating to the sale of the property. Alemu testified that after the appraiser valued the property at $179,000, her lender would not agree to a loan at the original purchase price, and so she and Haile proposed amending the sales contract to lower the purchase price to $179,000. The trial court admitted a copy of this amendment, which lists the names of Haile, Alemu, and Mr. Ifiesimama, and has signatures above each name.

On appeal, the Ifiesimamas argue that Mr. Ifiesimama did not sign the amendment and that the signature that appears above his name is fictitious. As evidence supporting this argument, the Ifiesimamas direct us to other places in the record where Mr. Ifiesimama's signature appears—including the original sales contract, a copy of Mr. Ifiesimama's driver's license, and documents that he signed at closing—and argue that the allegedly fictitious signature that appears on the amendment is clearly different from Mr. Ifiesimama's signature as it appears in other places. The Ifiesimamas offered no evidence at trial concerning the validity of the signature on the amendment. They did not call an expert in handwriting analysis. Furthermore, although Mr. Ifiesimama

testified at trial, he never testified that he did not sign the amendment or that the signature that appeared above his name on the amendment was fictitious or forged.

Moreover, the trial court had before it circumstantial evidence that Mr. Ifiesimama had agreed to the amendment lowering the purchase price. Mr. Ifiesimama acknowledged that he went to the closing and that he signed numerous documents, both in his own name and as attorney in fact for his wife. The trial court admitted copies of these documents, which included the HUD–1 Settlement Statement summarizing the transaction for both the buyers and the sellers. This particular document clearly stated the "contract sales price" as $179,000. Mr. Ifiesimama signed this document directly below a statement reading, "I have carefully reviewed the HUD–1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction." There was no testimony presented to the trial court that, at closing, Mr. Ifiesimama protested the amended purchase price or tried to argue that he never agreed to that price.

The Ifiesimamas also argue that Mrs. Ifiesimama refused to sign the original sales contract and that after this refusal, the sales contract was altered to remove her name from the document. The trial court admitted a copy of the original sales contract that did not have a space for Mrs. Ifiesimama to sign and did not reference her at all. Mr. Ifiesimama testified that at the time he signed the original sales contract, the contract listed both his name and his wife's name and had spaces for both of them to sign. When asked whether he was surprised that her name was no longer on the contract, he testified, "It's not there. I don't know why. They have removed it. I don't know."

However, the parties' agent, Eddie Tadesse, unequivocally testified that he did not remove any names from any of the documents, and he specifically stated that he did not remove Mrs. Ifiesimama's name. On cross-examination, the Ifiesimamas' counsel asked Alemu if it looked as though Mrs. Ifiesimama's name had been removed from the contract, and Alemu did not agree that it appeared as though a name had been removed. She stated, "I don't think it was removed. Because when we sign[ed] the paper, we [didn't] see anything was removed." The Ifiesimamas did not introduce into evidence a copy of the contract that listed Mrs. Ifiesimama's name as a seller. We conclude that, in light of this conflicting evidence, the trial court reasonably could have concluded that Mrs. Ifiesimama's name was never listed on the sales contract and that, therefore, her name was never removed without authorization.

Finally, the Ifiesimamas argue that there was factually insufficient evidence that Haile and Alemu tendered performance such that they were entitled to specific performance of the amended sales contract. Specifically, they argue that Haile and Alemu never attempted to make a payment of the purchase price to Mr. Ifiesimama.

Alemu testified that she and Haile appeared for the closing and that they paid their closing costs to the title company at that time. The trial court admitted documents reflecting that Haile and Alemu had obtained financing to purchase the property, and Haile and Alemu signed a deed of trust. Eddie Tadesse testified that no payment was made to Mr. Ifiesimama because Haile and Alemu had made their payment to the title company. We conclude that Haile and Alemu presented factually sufficient evidence that they tendered performance under the sales contract when they appeared at closing, secured financing to purchase the property, and paid the closing costs to the title company. *See DiGiuseppe*, 269 S.W.3d at 594 (holding that, to be entitled to specific performance, party generally must demonstrate that he has complied with contractual obligations and actually tendered performance). We therefore hold that factually sufficient evidence supports the trial court's findings that Mr. Ifiesimama breached the amended sales contract by failing to convey a general warranty deed and that Haile and Alemu are entitled to specific performance of the amended sales contract as a result. *See Reliant Energy Servs.*, 336 S.W.3d at 782 (holding that when appellants challenge adverse finding on which they did not have burden of proof, we set aside verdict only if evidence supporting finding is so weak as to make verdict clearly wrong and manifestly unjust).

We overrule the Ifiesimamas' fourth and sixth issues.

### Statute of Frauds

In their fifth issue, the Ifiesimamas argue that the trial court erred in rendering judgment in favor of Haile and Alemu contrary to the statute of frauds and contrary to several provisions in the Family Code relating to the conveyance of property owned by spouses.

The statute of frauds requires a contract for the sale of real estate to be in writing and signed by the party against whom it is charged. TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(4) (West 2015); *Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 569 (Tex. App.–Fort Worth 2008, pet. denied). Here, the trial court admitted into evidence copies of the original sales contract and the amendment to the contract. Mr. Ifiesimama—as the seller, the party against whom the sales contract is charged—undisputedly signed the

original sales contract. The amendment to the contract lists his name as the seller and has a signature above his name. Although he argues on appeal that this signature is fictitious, he presented no evidence to this effect at trial, such as expert handwriting analysis or even his own testimony that he never signed the amendment. Instead, Mr. Ifiesimama did not testify at all concerning the amendment to the sales contract and the signature that appears on it. Haile and Alemu thus presented evidence that Mr. Ifiesimama signed both the original sales contract and the amendment to the contract. We therefore conclude that the sales contract and its amendment do not violate the statute of frauds. *See* Tex. Bus. & Com. Code Ann. § 26.01(a), (b)(4); *Paciwest, Inc.*, 266 S.W.3d at 569.

The Ifiesimamas also argue that because the property was their community property, Mr. Ifiesimama lacked the authority to sell or encumber Mrs. Ifiesimama's interest in the property. They also argue that Haile and Alemu had notice of Mrs. Ifiesimama's interest in the property and that without Mrs. Ifiesimama's signature, the property could not be sold.

Family Code section 3.003 provides that property possessed by either spouse during marriage is presumed to be community property. Tex. Fam. Code Ann. § 3.003(a) (West 2006). Section 3.102(a) provides that during marriage, "each spouse has the sole management, control, and disposition of the community property that the spouse would have owned if single." *Id.* § 3.102(a) (West 2006). "Except as provided by Subsection (a) [of section 3.102], community property is subject to the joint management, control, and disposition of the spouses unless the spouses provide otherwise by power of attorney in writing or other agreement." *Id.* § 3.102(c). Section 3.104(a) states, "During marriage, property is pre-

sumed to be subject to the sole management, control, and disposition of a spouse if it is held in that spouse's name, as shown by muniment, contract, deposit of funds, or other evidence of ownership ...." *Id.* § 3.104(a) (West 2006). A third person dealing with a spouse is entitled to rely on that spouse's authority to deal with the property if: (1) the property is presumed to be subject to the sole management, control, and disposition of the spouse; and (2) the person dealing with the spouse is not a party to a fraud on the other spouse and does not have actual or constructive notice of the spouse's lack of authority. *Id.* § 3.104(b).

It is undisputed that the Ifiesimamas purchased the property during their marriage. Haile and Alemu introduced, and the trial court admitted into evidence, a copy of the deed of trust signed by Mr. Ifiesimama and filed in the Fort Bend County property records when he purchased the property in 2005. This document listed Mr. Ifiesimama as the sole borrower. The document also included the following provision:

BORROWER(S)' SPOUSE(S): The undersigned hereby joins in this Security Instrument for the sole purpose of encumbering, subordinating, conveying and/or waiving any current or potential interest in the Property. By signing below, the undersigned encumbers, subordinates, conveys and/or waives any and all rights, interests or claims in the Property, including, but not limited to, homestead, dower, marital or joint-occupancy rights. No personal liability under the Note is hereby incurred by the undersigned joining spouse.

Mrs. Ifiesimama's signature appears under this provision. Mr. Ifiesimama identified his wife's signature under this provision, although he also testified that he did not think that Mrs. Ifiesimama's had signed

over her marital rights in the property to him. The trial court also admitted records from the Fort Bend County Appraisal District which listed Mr. Ifiesimama as the sole owner of the property and indicated that he owned one hundred percent of the property. Mrs. Ifiesimama is not listed as an owner in these records.

The Ifiesimamas argue that the "Intermediary Relationship Notice," which listed Mrs. Ifiesimama's name alongside Mr. Ifiesimama's name as a seller and was signed by Mr. Ifiesimama, Haile, and Alemu, put Haile and Alemu on notice of Mrs. Ifiesimama's interest in the property. However, Haile and Alemu presented evidence, including documents on file with Fort Bend County and official county records, that Mr. Ifiesimama is the sole owner of the property. And the Ifiesimamas failed to produce the general warranty deed from the time they purchased the property showing whether Mr. Ifiesimama individually or Mr. and Mrs. Ifiesimama jointly purchased the property. However, the deed of trust corresponding to the mortgage on the property was introduced. It shows that Mr. Ifiesimama mortgaged the property individually, and Mrs. Ifiesimama signed a waiver of any interest she might have in the property. Property is presumed to be subject to the sole management, control, and disposition of a spouse if it is held in that spouse's name. See id. § 3.104(a) The Ifiesimamas did not introduce any evidence at trial indicating that Mrs. Ifiesimama had an interest in the property or that the property was subject to their joint management, control, or disposition. Furthermore, Alemu testified that Mr. Ifiesimama represented to Tadesse that he had authority to sell the property. There is no indication in the record that Haile and Alemu knew before the title company refused to close on the sale that Mrs. Ifiesimama had any interest in the property or that she did not agree

that the property should be sold. And all of the evidence in the record is to the contrary.

We conclude that Haile and Alemu presented evidence that the property was subject to Mr. Ifiesimama's sole management, control, and disposition and that they did not have notice that Mr. Ifiesimama lacked authority to sell the property on Mrs. Ifiesimama's behalf. We also conclude that the Ifiesimamas have not demonstrated that Mrs. Ifiesimama was a necessary party to the sales contract and that the contract was not valid without her signature. We hold that the trial court did not err in concluding that Haile and Alemu entered into a valid and enforceable contract with Mr. Ifiesimama.

We overrule the Ifiesimamas' fifth issue.

### Attorney's Fees and Damages

 In their seventh issue, the Ifiesimamas argue that the trial court erred in awarding Haile and Alemu both specific performance and monetary damages, including their earnest money deposit, and that Haile and Alemu's counsel did not properly segregate his attorney's fees.

 A litigant may recover attorney's fees only if authorized by statute or by a contract between the parties. *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). "Absent a contract or statute, trial courts do not have inherent authority to require a losing party to pay the prevailing party's fees." *Chapa*, 212 S.W.3d at 311. As a result, claimants seeking attorney's fees must "segregate fees between claims for which they are recoverable and claims for which they are not." *Id.*

The original sales contract included the following provision concerning attorney's

fees: "A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to the contract is entitled to recover reasonable attorney's fees and all costs of such proceeding." At trial, Derek Deyon testified that Haile and Alemu had incurred $16,250 in attorney's fees as a result of Mr. Ifiesimama's breach of the sales contract. Deyon also testified that to the extent Haile and Alemu were suing the Ifiesimamas for specific performance, because they were seeking an equitable remedy and not monetary damages, they could not recover attorney's fees for that claim. The trial court, after finding that Mr. Ifiesimama breached the sales contract, awarded Haile and Alemu $495 in costs, $1,000 representing their earnest money deposit, and $16,250 in attorney's fees and also ordered specific performance.

■ Although Deyon testified that he could not recover attorney's fees for Haile and Alemu's specific performance claim, and the Ifiesimamas argue on appeal that fees are not recoverable on this claim and Deyon improperly failed to segregate his fees, case law does not preclude an award for attorney's fees when specific performance is granted when the contract at issue otherwise allows the prevailing party to recover attorney's fees. As we have noted above, specific performance is not a separate cause of action; rather, it is an equitable remedy that may be awarded when a party breaches a contract. *See Stafford*, 231 S.W.3d at 535. Thus, for specific performance to be awarded, the trial court must find that the defendant has breached a contract. *See DiGiuseppe*, 269 S.W.3d at

594 (holding that, to be entitled to specific performance, plaintiff must show that he has substantially performed his contractual obligations). When the trial court finds a breach of contract and awards specific performance as the remedy, the trial court may properly award attorney's fees to the prevailing party if the contract so provides. *See, e.g., Albataineh v. Eshtehardi*, No. 01-12-00671-CV, 2013 WL 1858864, at *2 (Tex. App.–Houston [1st Dist.] May 2, 2013, no pet.) (mem. op.) ("A judgment requiring specific performance of a material contract right can support an award of attorney's fees."); *Blue Moon Venture, L.L.C. v. Horvitz*, No. 14-09-00459-CV, —— S.W.3d ——, ——, 2010 WL 4013533, at *2 (Tex. App.–Houston [14th Dist.] Oct. 14, 2010, no pet.) (mem. op.) (remanding case for trial court to determine attorney's fees owed to party awarded specific performance when contract entitled prevailing party to recover attorney's fees); *see also Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 797 (Tex. App.–Houston [1st Dist.] 2001, no pet.) (holding attorney's fees may be recoverable by prevailing party in absence of award of monetary damages).

■ The sales contract in this case allows a buyer "who prevails in any legal proceeding related to this contract" to recover reasonable attorney's fees and costs. Haile and Alemu have prevailed in a legal proceeding related to the sales contract. They are therefore entitled under the sales contract to an award of reasonable attorney's fees and costs.[2] On appeal the Ifiesimamas do not challenge the specific amount awarded to Haile and Alemu as

---

2. The Ifiesimamas also argue that Haile and Alemu are not entitled to attorney's fees because the sales contract was amended contrary to section 22, which provided, "This contract contains the entire agreement of the parties and cannot be changed except by their written agreement." They argue that "[a]warding attorney['s] fees and completely ignoring the section which deal[s] with the amendment of the contract[] amount[s] to selective interpretation of the contract to favor one party against the other party." We have already held, however, that the trial court had evidence before it that Mr. Ifiesimama agreed to the amendment of the contract to lower the sales price and that the Ifiesima-

unreasonable. We therefore hold that the trial court did not err in awarding Haile and Alemu $16,250 in attorney's fees.[3]

The Ifiesimamas also argue that the trial court erred by awarding both specific performance and $1,000 representing Haile and Alemu's earnest money deposit because the sales contract, in the event of a default by the seller, allows the buyer to seek specific performance of the contract *or* to terminate the contract and receive their earnest money. We agree.

The "Default" provision in the sales contract provided as follows in the event of a breach by the seller:

> If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

The sales contract thus entitled Haile and Alemu, in the event of a breach by the Ifiesimamas, to specific performance or "such other relief as may be provided by law," such as monetary damages for breach of contract, or both, or they could terminate the contract and seek recovery of their earnest money deposit. The language of the sales contract does not allow them to seek both specific performance and recovery of their earnest money deposit. *See Goldman v. Olmstead*, 414 S.W.3d 346, 361 (Tex. App.–Dallas 2013, pet. denied) (noting that when party to real estate contract sues for damages, he "has elected to treat the contract as terminated by the breach and to seek compensation for that breach," but when party sues for specific performance, "he affirms the contract and requests the trial court to effectuate the agreement"); *see also DiGiuseppe*, 269 S.W.3d at 603 (holding that although DiGiuseppe was not entitled to remedy of specific performance, case should be remanded to trial court to allow him to "seek recovery on his alternative remedy under the purchase contract of termination and recovery of earnest money he paid").

We conclude that the sales contract allowed Haile and Alemu to seek specific performance *or* to terminate the contract and recover their earnest money deposit, but it did not allow them to obtain specific performance of the contract *and* recover their earnest money deposit. We hold that the trial court erred by awarding Haile and Alemu their $1,000 earnest money deposit after determining that they were entitled to specific performance, and we modify the trial court's judgment to delete the award of $1,000 in earnest money.

We sustain the Ifiesimamas' seventh issue in part.

### Errors in Trial Court's Judgment

■ In their second issue, the Ifiesimamas contend that the trial court erred

---

mas did not establish that Mr. Ifiesimama's signature on the amendment was forged. The evidence thus reflects that the parties properly amended the sales contract according to its terms.

3. Although Haile and Alemu pleaded specific performance as a separate cause of action from their breach of contract claim, specific performance is actually an equitable remedy that is an alternative remedy to monetary damages for breach of contract. Therefore, they essentially brought one claim for breach of contract and sought alternative remedies. Thus, this is not a situation in which they brought a claim for which attorney's fees are recoverable and a claim for which attorney's fees are not recoverable, which would have required them to segregate their attorney's fees. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006) ("As a result, fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not.").

in rendering judgment against Mrs. Ifiesimama contrary to its finding that she did not enter into the contract with Haile and Alemu. In their third issue, the Ifiesimamas argue that the trial court erred in rendering judgment against them jointly and severally when Haile and Alemu did not plead for this relief.

Haile and Alemu sought specific performance against both Ifiesimamas, and they brought a claim for breach of contract solely against Mr. Ifiesimama. It is undisputed that Mrs. Ifiesimama did not sign the sales contract at issue. The trial court agreed and stated on the record and in its written findings of fact that only Mr. Ifiesimama signed the sales contract with Haile and Alemu. The trial court concluded, in its written conclusions of law, that Mr. Ifiesimama failed to convey a general warranty deed to Haile and Alemu and thus breached the contract. The trial court did not conclude that Mrs. Ifiesimama breached the contract. However, in its final judgment, the trial court ordered both Mr. and Mrs. Ifiesimama, jointly and severally, to pay costs, $1,000 representing Haile and Alemu's earnest money deposit, and attorney's fees, and it ordered both Ifiesimamas to specifically perform the sales contract by conveying the property to Haile and Alemu.

Haile and Alemu characterize specific performance as a separate claim from their breach of contract cause of action, but, as we have already discussed, specific performance and breach of contract are not distinct causes of action; rather, specific performance is an equitable remedy for breach of contract. *See Stafford*, 231

S.W.3d at 535. A plaintiff may obtain specific performance upon a showing of breach of contract. *See DiGiuseppe*, 269 S.W.3d at 594 (holding that, to be entitled to specific performance, plaintiff must show that he has substantially performed his contractual obligations). Haile and Alemu sought specific performance against Mrs. Ifiesimama, but they did not allege a breach of contract claim against her, and they agreed at trial that they could not recover monetary damages for breach of contract against her because she never signed the sales contract. To be entitled to specific performance against Mrs. Ifiesimama, Haile and Alemu needed to plead and prove that she breached the sales contract. Because they did not, we hold that the trial court erred to the extent that it rendered judgment against Mrs. Ifiesimama for costs, payment of the earnest money deposit, attorney's fees, and specific performance. We therefore modify the judgment of the trial court to delete the award of costs, earnest money, attorney's fees, and specific performance against Mrs. Ifiesimama.

We sustain the Ifiesimamas' second issue.[4]

### Conclusion

We modify the judgment of the trial court to delete the award of $1,000 in earnest money against both of the Ifiesimamas and to delete the award of costs, attorney's fees, and specific performance against Tamunnoibuomi Ifiesimama. We affirm the judgment as modified.

---

4. Because we hold that the trial court erred in rendering judgment against Mrs. Ifiesimama, and we modify the judgment of the trial court to delete the awards rendered against her, we need not address the Ifiesimamas' third issue concerning whether the trial court could award relief "jointly and severally" despite Haile and Alemu's failure to plead for joint and several relief.