**Opinion issued August 19, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00955-CV

———————————

**TRIMCOS, LLC AND SANTOSH MUKERJI, Appellants**

**V.**

**AQUATIC SOLUTIONS OF TEXAS, Appellee**

On Appeal from the 165th District Court
Harris County, Texas
Trial Court Case No. 2016-19920

## MEMORANDUM OPINION

In this construction-project dispute, Appellants Trimcos LLC and Santosh Mukerji appeal the judgment ordering them to pay Appellee Aquatic Solutions of Texas ("AST") monies owed for work performed. We reverse in part and affirm in part, concluding the evidence is legally insufficient to support the jury's finding that

Mukerji agreed in writing to guarantee payment to AST, but is factually sufficient to support the jury's finding regarding the amount of money Trimcos owes AST.

## Background

Raffy Bell hired Trimcos, which Mukerji owned at the time, to be the general contractor for the construction of a commercial building in Harris County. Trimcos entered into three written contracts with subcontractor AST regarding steel, glass, and facade work for the project. AST asserts that it later entered into additional contracts with Trimcos for various other aspects of the project.

Claiming that Trimcos failed to pay all monies owed, AST sued Trimcos and Mukerji for breach of contract and other claims.[1] Trimcos and Mukerji answered, and Trimcos asserted counterclaims against AST. After three days of evidence, the jury found in favor of AST on its claims for breach of contract[2] and quantum meruit against Trimcos, determining AST is entitled to $97,801.00 in damages. The jury also found Mukerji agreed in writing to answer for Trimcos's debt. The jury rejected Trimcos's counterclaims.

The parties filed post-verdict motions, and the trial court rendered judgment on the jury's verdict. Trimcos and Mukerji now appeal.

---

[1]    AST also sued other defendants who are not parties to this appeal.

[2]    The only additional contract claimed by AST that the jury found did not exist was for beam and angle work.

<div align="center">**Analysis**</div>

On appeal, Mukerji challenges the jury's finding that he guaranteed Trimcos's debt to AST, and Trimcos challenges the jury's damages award (but not the jury's liability findings).

**A.      No evidence supports finding that Mukerji is a guarantor**

In issue one, Mukerji argues the evidence is legally and factually insufficient to support the jury's finding that he agreed "in a writing signed by him to answer for the debt or default, if any, of Trimcos." We agree.

In support of the jury's finding, AST refers to two credit-card receipts which show that downpayments of $25,000 each were made to AST regarding glass work for the subject project. The receipts bear Mukerji's electronic signature, but there is no language indicating that Mukerji was agreeing to guarantee any aspect of Trimcos's debt to AST. We hold there is no evidence to support the challenged jury finding and sustain this issue. *See Altice v. Hernandez*, 668 S.W.3d 399, 409 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (providing established standard for reviewing legal sufficiency of evidence); *Wheelock v. Trim Elec., Inc.*, No. 01-12-00475-CV, 2013 WL 3233239, at *6 (Tex. App.—Houston [1st Dist.] June 25, 2013, no pet.) (mem. op.) (explaining guarantee agreement must be in writing and contain all essential elements of the agreement, including "a manifestation of intent to guaranty the obligation").

<div align="center">3</div>

**B. The evidence is factually sufficient to support the amount of damages**

In issue two, Trimcos argues that the evidence is factually insufficient to support the jury's finding that Trimcos owed AST $97,801.

When reviewing a factual-sufficiency challenge, we must consider and weigh all the evidence in a neutral light, understanding that the jury is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Altice*, 668 S.W.3d at 410. After considering and weighing all the evidence, we set aside the judgment only if the evidence supporting the finding is so weak as to make the judgment clearly wrong and manifestly unjust. *Ifiesimama v. Haile*, 522 S.W.3d 675, 683–84 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

Trimcos begins by arguing the jury incorrectly determined Trimcos's credit for past payments to AST was $497,909 because the following evidence proved the past payment totaled $583,436.87: (1) K1 forms[3] AST signed indicating Trimcos had paid $457,363 regarding various aspects AST's work; (2) checks from Trimcos to AST totaling $92,950 in additional payments; and (3) an AST invoice showing Trimcos paid $33,123.87 for stucco material. But AST presented testimony and documents establishing that Trimcos's past payments totaled $497,909, including

---

[3] Trimcos also appears to argue that the payments reflected in the K1 forms should have been automatically credited because the forms comply with section 53.284 of the Texas Property Code, titled "Forms for Waiver and Release of Lien or Payment Bond Claim." *See* TEX. PROP. CODE § 53.284. We do not consider this issue because Trimcos failed to preserve it in the trial court. *See* TEX. R. APP. P. 33.1(a).

Trimcos's own payment ledger. The jury was free to believe this evidence over the evidence Trimcos highlights for the following three reasons. *See FMC Techs., Inc. v. Murphy*, 679 S.W.3d 788, 815 (Tex. App.—Houston [1st Dist.] 2023, pet. denied) ("We assume that the jury resolved all conflicts in the evidence in accordance with its decision if a reasonable factfinder could have done so.").

First, AST's representative, Fadi Harb, testified that AST signed the K1 forms because Mukerji told him the bank needed the forms to pay Trimcos but that AST would be paid the money owed. Harb testified he was deceived into signing the K1 forms. Mukerji did not appear at trial due to illness, but Trimcos's representative, Robin Morales, testified it would be untruthful for a contractor to ask a subcontractor to sign a K1 form that misstates the amount of payments made in order for the contractor to obtain the bank's payment. Morales also could not explain why Trimcos's internal ledger showed Trimcos made almost $100,000 less in payments than as reflected in the K1 forms.

Second, Trimcos's internal ledger showed that the $92,950 in "additional" payments was actually part of the $497,909 in payments Trimcos made.

Third, Harb testified that, while AST originally credited Trimcos $33,123.87 for purchasing the stucco material, he later confirmed with Trimcos that the correct amount of the credit was $25,963.

Trimcos next argues AST's records show that project-owner Bell—not Trimcos—authorized $9,750 in additional glass work, which AST improperly increased to $29,000 in a later invoice. Trimcos contends that, because it did not approve this additional work,[4] and AST artificially inflated the amount owed, the jury should not have included it in the damages finding.

Again, there is evidence rebutting Trimcos's argument. Harb testified Trimcos approved a change to the type of glass used which increased the amount owed, and Bell simply chose the color of glass. Harb had multiple discussions with Mukerji about the price of the additional glass work and told Mukerji there was a certain price-range within which the work would be done. Harb's testimony further supports a finding that he prepared a prework invoice quickly that had the additional work priced at $9,750, but that AST sent an invoice after the work had been completed reflecting the actual amount owed as $29,000. Harb explained the reason for this price increase was because Trimcos decided to switch from black to white "spender glass." Additionally, the representative of AST's glass sub-subcontractor,

---

[4] On appeal, Trimcos notes that the written contracts required that Trimcos approve in writing any additional work. Trimcos did not seek a legal ruling from the trial court that the written contracts barred oral approval of additional work, and the unobjected-to jury charge included an instruction that oral agreements may be enforceable. The jury found Trimcos and AST entered into a contract for the additional glass work separate from the original glass work contract, and Trimcos does not challenge that finding on appeal. Accordingly, we are not tasked with determining whether the written-approval provision legally barred AST's reliance on Trimcos's oral approval.

Wael Hassouneh, testified that Trimcos informed him about a change order with the glass work. The jury could have chosen to believe the foregoing testimony supported a finding that Trimcos owed AST $29,000 for the additional glass work.

Finally, Trimcos argues the evidence is factually insufficient to support the damages award because Harb testified certain photographs may show incomplete or sloppy glass work regarding windows and there was evidence water leaked from the windows. Trimcos contends this deficient work means it did not owe AST the full amount.

Harb testified he does not know who took the photographs, when they were taken, or where they were taken, but that they do not reflect how the work looked when it was completed. He testified there were no problems with AST's work and that he does not recall seeing the photographs before trial. Harb explained that AST received one complaint from Trimcos about a glass leak, so he sent Hassouneh to inspect, who discovered the leak stemmed from an unrelated roof issue. Harb testified that Trimcos communicated with him frequently by text message but did not send a single text saying AST's work was deficient, even when AST was demanding payment.

Hassouneh testified that the photographs do not reflect the condition of the project when his team completed the work but that someone else performed the improper caulking that looks unprofessional and clogged drainage holes. Hassouneh

7

stated that a gap between the stucco and window shown in one of the photographs was not caused by his team but, in any event, would not cause a leak and could be remedied with caulk. He testified that the water leak was not caused by the windows. He stated that the list of glass work problems Trimcos has asserted in this lawsuit is minor and could have been remedied quickly in a few days for around $1,500. Hassouneh further testified that the only complaint he received regarding the glass work leaking ended up being an unrelated issue with the roof, and he did not hear about any further leaks.

Trimcos's representative, Morales, testified about the purported glass work problems, including that AST refused to come fix the leaks. Morales testified he was there when Trimcos took photographs and videos of the deficient work, which showed uneven metal frames, gaps, and caulking issues that he says caused leaks on eighty percent of the windows. But on cross-examination, Morales conceded Trimcos did not perform tests or hire an inspector to determine the source of the leaks, although he also said some unnamed glass contractor told him the leaks were caused by the windows but did not tell him how much it would cost to remedy the issues. Morales stated that the photographs were taken in 2016, which was well after the glass work was completed in late February 2015. He does not know if he sent the photographs and videos to AST or if Trimcos provided AST with a punch list of issues that needed to be corrected. Accordingly, the jury could have chosen to

believe that AST was not responsible for the purported deficiencies in the glass work.

In sum, considering and weighing all the evidence, and keeping in mind the jury's prerogative to resolve evidentiary conflicts, we hold that the evidence supporting the jury's damages finding is not so weak as to make the judgment clearly wrong and manifestly unjust. *See Haile*, 522 S.W.3d at 683–84. We overrule Trimcos's factual-sufficiency challenge.

## Conclusion

Having sustained Mukerji's issue regarding the jury's guarantee finding, we modify the trial court's judgment to delete those portions of the judgment stating that AST has a judgment against, and recovers anything from, Mukerji, and add language that a take-nothing judgment is rendered in Mukerji's favor. We affirm the judgment as modified.

<div style="margin-left:50%">

Andrew Johnson
Justice

</div>

Panel consists of Chief Justice Adams and Justices Caughey and Johnson.