

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

---

No. 02-22-00148-CV

---

BRANDON FORD, Appellant

V.

RANDELL CUTBURTH AND BRENDA CUTBURTH, D/B/A CUTBURTH
CONSTRUCTION, Appellees

---

On Appeal from the 415th District Court
Parker County, Texas
Trial Court No. CV19-0598

---

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

Appellant Brandon Ford sued Appellees Randell Cutburth and Brenda Cutburth d/b/a Cutburth Construction for damages resulting from the dissolution of their business agreement. The Cutburths filed a joint no-evidence and traditional motion for summary judgment, and the trial court granted the motion. Ford argues in a sole issue on appeal that the trial court erred by granting the motion for summary judgment because he presented sufficient summary judgment evidence to raise a genuine issue of material fact. We will affirm.

### II. BACKGROUND

Ford and the Cutburths entered into an oral agreement in 2012 in which Ford would perform construction projects with Cutburth Construction and they would share the profits. In early 2015, Ford informed the Cutburths that he would no longer be able to work on the joint projects, and the agreement between Ford and the Cutburths ended in June 2015. There was a dispute between Ford and the Cutburths over unpaid invoices and the division of equipment.

Ford filed suit against the Cutburths for breach of contract, conversion and theft of property, fraud, and fraudulent inducement seeking $1 million in damages. Ford asserted that he had discovered in August 2018 that the Cutburths had not distributed to him his share of the profits in the amount of $275,009.65. Ford further

alleged that the Cutburths had retained his personal property and did not comply with the terms of their agreement in dividing the equipment.

The Cutburths filed a joint traditional and no-evidence motion for summary judgment. In the motion, they asserted that there was no evidence to support Ford's claims for fraud and fraudulent inducement, as well as for breach of contract. They argued that they were also entitled to traditional summary judgment on Ford's claims for breach of contract and for conversion and theft of property because Ford could not establish one or more of the essential elements of those claims. They further contended that Ford's claim for conversion and theft of property was barred by the statute of limitations.

The Cutburths attached as summary judgment evidence the affidavit of Brenda Cutburth. In her affidavit, Brenda[1] stated that the agreement between Ford and Cutburth Construction provided that Ford would "receive half of all labor profit on all jobs that were not part of Cutburth Construction['s] suction jobs." According to Brenda, the payment structure was never formal. She and Ford would sit down and discuss the division of the income, and she would issue Ford a check based upon his instructions. The Cutburths also included as summary judgment evidence a list of the invoices that Ford claimed were unpaid. Brenda stated that Ford never sent invoices for his work and that Cutburth Construction had issued payment by check directly to

---

[1]Given the common surname, we use the first name of Brenda and Randell for ease of reference.

Ford through his company, Lillab, LLC. Brenda stated that she was "certain any and all partnership distributions [had] been paid." The Cutburths' summary judgment evidence additionally included copies of the checks Cutburth Construction had issued to Lillab.

In his response to the Cutburths' no-evidence motion, Ford argued that he had "produced evidence to meet all elements of Defendants' no-evidence motion for summary judgment grounds." As to the Cutburths' traditional motion for summary judgment, Ford argued that the attached summary judgment evidence was "sufficient to create a disputed issue of material fact as to every ground asserted in Defendants' traditional motion."

Ford attached his own affidavit as summary judgment evidence. In his affidavit, he stated that Randell had approached him and had asked if he would be interested in splitting profits from projects that he worked on with Cutburth Construction. Ford stated that there was never any partnership discussed but rather it was a joint venture where he was paid a "split of the profits on any projects we worked together." Ford did not know if the split was 50/50.

Ford acknowledged in his affidavit that the agreement as to payment was "fluid and inconsistent." Ford stated that Brenda would total the work completed and

4

would email Connie's Bookkeeping Services[2] to generate an invoice. Connie's Bookkeeping Services would prepare the invoice pursuant to Brenda's instructions and send the invoice to Cutburth Construction for payment.

Ford also attached the affidavit of Connie Lindley as summary judgment evidence. In her affidavit, Lindley stated that she began providing bookkeeping services to Lillab in 2012. Lindley further stated that Ford had informed the bookkeeping service that it was to submit invoices to Cutburth Construction and that the invoices were to be made out per Brenda's instructions. Lindley attached an exhibit to her affidavit that included a list of open invoices that were owed to Ford by Cutburth Construction as of March 23, 2018. Lindley stated that she had forwarded this information to David Flynn, a certified public accountant.

Ford additionally attached as summary judgment evidence the affidavit of Flynn. Flynn stated that he prepares taxes and other related financial matters for Ford and Lillab. According to Flynn, he notified Ford on March 23, 2018 that there were unpaid invoices owed to Ford by Cutburth Construction.

The trial court granted the Cutburths' motion for summary judgment without specifying the grounds for its judgment. The trial court ordered that Ford take nothing on his breach of contract, conversion and theft of property, fraudulent inducement, and fraud causes of action. This appeal followed.

---

[2]We note that Ford referred to the bookkeeping service as "Connie's Bookkeeping Services" in his affidavit; however, Connie Lindley stated in her affidavit that she is the owner of "Connie's Bookkeeping Solutions."

## III. DISCUSSION

Ford argues in his sole issue on appeal that the trial court erred in granting the traditional and no evidence motion for summary judgment.

### A. Summary Judgment Standards of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant that conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all elements of that defense. *Frost Nat'l Bank*, 315 S.W.3d at 508-09; *see* Tex. R. Civ. P. 166a(b) (c). To accomplish this, the defendant must present summary judgment evidence that conclusively establishes each element of the affirmative defense. *See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008).

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that

6

no evidence supports an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which no evidence exists. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine, material fact issue. *See* Tex. R. Civ. P. 166a(i) & 1997 cmt.; *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 259 (Tex. 2020).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*, 286 S.W.3d at 310 (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

When a party moves for summary judgment under both Rules 166a(c) and 166a(i), we will first review the trial court's judgment under the standards of Rule

7

166a(i).  *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).  *But see D.R. Horton-Tex., Ltd. v. Savannah Props. Assocs., L.P.*, 416 S.W.3d 217, 225 n.7 (Tex. App—Fort Worth 2013, no pet.) (addressing traditional summary judgment first because movant's release affirmative defense was dispositive).  If the appellant failed to produce more than a scintilla of evidence under that burden, there is no need to analyze whether the appellee's summary judgment proof satisfied the Rule 166a(c) burden.  *Ridgway*, 135 S.W.3d at 600.

## B.  Fraud and Fraudulent Inducement

Fraudulent inducement shares the same basic elements as a claim for fraud: (1) a material misrepresentation; (2) made with knowledge of its falsity or asserted without knowledge of its truth; (3) made with the intention that it should be acted on by the other party; (4) on which the other party relied; and (5) that caused injury. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018).  In their motion for summary judgment, the Cutburths argued that Ford could not establish any of the elements for either claim.

The Cutburths specifically contended that there was no evidence of a material misrepresentation that Ford had relied upon to his detriment.  In his live pleading, Ford claimed that the Cutburths had intended to fraudulently induce him into the "contract" and into possession of his property to prevent him from the enjoyment and use of his property.  But pleadings, even if sworn to, do not constitute summary

8

judgment proof. *Laidlaw Waste Sys. (Dall.), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995).

In his response to the Cutburths' no-evidence motion for summary judgment, Ford did not provide any evidence of a material misrepresentation. In his affidavit, Ford contends that "it was fraudulent on Cutburth Constructions' part to tell me that I would be paid on projects and then not pay me." But he did not identify any misrepresentation made by the Cutburths on which he relied to his detriment.

Ford acknowledged that the payment arrangement with the Cutburths was "fluid and inconsistent." He stated that he had no input on how Brenda arranged for his payment and that he did not know if they split the profits evenly. Ford relies on Lindley's affidavit, which states there were unpaid invoices owed to him by the Cutburths, as evidence of fraudulent inducement. However, the failure to perform a contract is not evidence of fraud. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). Lindley's affidavit thus does not provide evidence of a material representation by the Cutburths.

Examining the entire record in the light most favorable to Ford and indulging every reasonable inference and resolving any doubts against the Cutburths' motion, Ford failed to produce summary judgment evidence raising a genuine issue of material fact that the Cutburths had made a misrepresentation to him and that he had relied on said misrepresentation to his detriment. *See* Tex. R. Civ. P. 166a(i); *Anderson*, 550

9

S.W.3d at 614. Accordingly, we hold that the trial court did not err by granting summary judgment in favor of the Cutburths on Ford's fraud and fraudulent inducement claims. We overrule this portion of Ford's sole issue.

## C. Breach of Contract

In a breach of contract claim, the plaintiff must prove: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018); *see, e.g.*, *Ifiesimama v. Haile*, 522 S.W.3d 675, 685 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). In their no-evidence motion for summary judgment, the Cutburths argued that there was no evidence to show that they breached their contract with Ford.

The specific terms of the agreement between Ford and the Cutburths are not part of the summary judgment evidence.[3] But the parties agree that there was an oral contract between them that Ford would provide services to Cutburth Construction and that they would share in the profits from those projects. They disagree, however, on whether the Cutburths breached that contract.

---

[3]Ford acknowledged that the payment agreement was "fluid and inconsistent" and that he did not know if they split the profits evenly. Brenda stated that the payment structure was never formal and that she and Ford would sit down and discuss the division of the income.

10

Ford's claim for a breach of contract is based upon information from Lindley that there were unpaid invoices owed to Ford by Cutburth Construction. In her affidavit, Lindley stated that

> We entered activity in an 'after-the-fact' manner; not daily activity such as paying bills or creating invoices, etc. We simply entered prior-month activity as it appeared on bank statements and credit card statements.
>
> Around June 2013, Brandon Ford informed us that we were to submit invoices to Cutburth Construction; invoices to be made out per Brenda Cutburth's instructions via weekly emails. My recollection was that Brandon Ford had no input whatsoever to the amounts or frequency of invoices; that he deferred to Brenda Cutburth for invoicing dates and amounts.

According to Lindley, the invoices were created to give Cutburth Construction "documentation reflecting the payments that had been paid to Lillab, LLC." Lindley attached to her affidavit a list of open invoices for Lillab as of March 23, 2018, totaling over $275,000. But neither the actual invoices not the emails from Brenda to Lindley were part of the summary judgment evidence.

In his affidavit, Flynn stated that he prepared taxes and other related financial matters for Ford and Ford's company Lillab, LLC. Flynn further stated:

> On or about March 2018, as part of my regular scope of work for Mr. Ford and Lillab, I received a list as part of a QuickBooks File from Connie Lindley's Bookkeeping Solutions that showed open, unpaid invoices owed by Cutburth Construction to Lillab and Brandon Ford. I printed that list, and forwarded it to Mr. Ford on March 23, 2018.

The QuickBooks file showing open and unpaid invoices owed to Ford was not part of the summary judgment evidence.

11

Because Lindley and Flynn failed to attach the documents referenced in their affidavits that provided the factual bases for their respective conclusions, their affidavits are rendered conclusory. *See Camarillo v. Cabinets by Michael, Inc.*, No. 02-17-00154-CV, 2018 WL 3153539, at * 5 (Tex. App. — Fort Worth June 28, 2018, pet. denied) (mem. op.). Conclusory affidavits are not enough to raise fact issues. *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996). Therefore, the conclusory affidavits of Lindley and Flynn are no evidence that the Cutburths breached their agreement with Ford to pay him a share of the profits. Moreover, Lindley stated that she had prepared the invoices "after-the-fact" to provide documentation of payments made by Cutburth Construction to Lillab.

Examining the entire record in the light most favorable to Ford and indulging every reasonable inference and resolving any doubts against the Cutburths' motion, Ford has not provided more than a scintilla of summary judgment evidence raising a genuine issue of material fact that the Cutburths breached the contract by failing to perform or tender performance as the contract required. *See Smith*, 288 S.W.3d at 424; Tex. R. Civ. P. 166a(i). We overrule this portion of Ford's sole issue.

## C. Conversion and Theft of Property

In his live pleading, Ford claimed that the Cutburths converted his equipment by wrongfully exercising dominion and control over the property and by refusing to return the property, essentially committing theft. In their motion for summary judgment, the Cutburths argue that this claim is barred by the statute of limitations.

12

The Cutburths contended that the cause of action accrued when the partnership ended in June 2015. A person must bring suit for conversion of personal property and the taking or detaining of the property of another no later than two years after the date the cause of action accrues. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a). Ford filed suit in November 2018.

A defendant who moves for summary judgment based on the statute of limitations bears the burden of proving when the cause of action accrued. *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019). The plaintiff may plead the discovery rule in response to a limitations defense. *See Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018). The defendant need not negate the discovery rule to prove when the cause of action accrued unless the plaintiff pleads the discovery rule. *Erikson*, 590 S.W.3d at 563; *In re Est. of Matejek*, 960 S.W.2d 650, 651 (Tex. 1997). If the plaintiff pleads the discovery rule, the defendant may disprove the discovery rule by proving that (1) it does not apply or (2) it applies but summary judgment evidence demonstrates that the plaintiff discovered, or reasonably should have discovered, its injury within the limitations period. *Schlumberger*, 544 S.W.3d at 834.

Ford responded that the discovery rule applied to extend the statute of limitations because he did not discover the wrong until March 23, 2018, when he learned of the unpaid invoices. Ford stated in his affidavit:

> My wife, Sadie Ford, filed for divorce on November 20, 2014. I kept Randell and Brenda Cutburth informed about my divorce, what was going on, custody of Lillian, and what would happen if I received

13

custody of Lillian. If I received custody of Lillian, I would not be able to work for Cutburth Construction unless it was during a time I did not have Lillian. Whenever my divorce was finalized and I was awarded custody of Lillian, I informed Cutburth Construction that I would no longer be able to be a part and that I would give them a few weeks' time to decide what equipment they wanted to have.

Approximately 3 weeks later, I returned to South Texas . . .to retrieve the equipment that I personally owned. . . . After going through the list with Brenda Cutburth and being told what items Cutburth Construction wanted to keep, I was able to tell them which items I wanted to keep and from that what items would be sold. With the understanding that those items would not be used and when put up for sale at that time, the profits would be split. However, after leaving that day, I was informed by employees of Cutburth Construction that the equipment to be sold had been used on jobs for the benefit of Cutburth Construction. I also saw for myself the equipment being moved from South Texas to Weatherford, Texas and used to clear lots and assist in Attconstruction [sic] of a new building, as well as the construction business for Cutburth Construction.

Ford's affidavit established that he was aware that the Cutburths were in possession of his property shortly after his divorce was finalized. Brenda stated in her affidavit that Ford informed them in "early 2015" that he had "received joint custody of his daughter" and that the Cutburths' agreement with Ford ended in "summer of 2015." Therefore, the summary judgment evidence shows that Ford's cause of action for conversion and theft accrued in 2015. Ford was thus required to bring suit for conversion and theft of property no later than two years after the cause of action accrued in 2015. *See* Tex. Civ. Prac. & Rem. Code Ann. §16.003(a). Because Ford did not bring suit until November 2018, the Cutburths conclusively established that Ford's claims for conversion of property and theft were barred by the statute of

14

limitations.  *See* S*chlumberger*, 44 S.W.3d at 834.  We overrule this portion of Ford's sole issue.

## IV.  CONCLUSION

We hold that the trial court did not err by granting the Cutburths' motion for summary judgment.  We overrule Ford's sole issue on appeal.  Accordingly, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered:  February 9, 2023