**Opinion filed January 8, 2026**



In The

# Eleventh Court of Appeals

————

## No. 11-25-00167-CV

————

## JULIO CESAR GALINDO MANCHA, Appellant

## V.

## LORENA MANCHA, Appellee

**On Appeal from the 446th District Court**
**Ector County, Texas**
**Trial Court Cause No. E-23-10-1428-FM**

### M E M O R A N D U M   O P I N I O N

Pro se Appellant, Julio Cesar Galindo Mancha, appeals the entry of the trial court's final decree of divorce. Appellant contends that the trial court abused its discretion by awarding Lorena Mancha, Appellee, spousal maintenance. *See* TEX. FAM. CODE ANN. § 8.051 (West 2020). In several issues, Appellant challenges Appellee's eligibility for spousal maintenance, as well as the amount ordered. Appellant likewise asserts that the trial court abused its discretion by failing to include a provision in the final decree of divorce granting Appellee's request to change her last name.

## I. *Factual Background*

Appellant and Appellee were married on December 23, 1995. Appellant was eighteen years old, and Appellee had just turned seventeen. Appellee dropped out of the eighth grade because Appellant "didn't want [her] to be talking to boys," and she never finished school.

Appellant began his spousal abuse of Appellee "[r]ight after [they] got married." In February or March 1996, when Appellee was about seven months pregnant with their oldest daughter, Appellant dragged her by her hair and choked her. Appellee endured physical abuse for the first decade of the marriage, including during both pregnancies with the parties' daughters. Appellant's physical abuse halted around 2006 when their youngest daughter was three years old, but according to Appellee, the verbal and emotional abuse "never stopped." For instance, Appellant called Appellee ugly and lazy throughout the marriage.

According to Appellee, Appellant's physical abuse resumed in 2022 and 2023, which resulted in Appellee calling police multiple times. The parties separated, and Appellant moved out of their shared home in September 2023. Appellant immediately moved in with his girlfriend, whom he had been dating since 2022. Appellee learned that, prior to their separation, Appellant had opened a personal checking account in his name and had been secretly paying for gifts and vacations for his girlfriend and her children.

In October 2023, Appellant filed an original petition for divorce. Appellee filed an answer and counterpetition in which she requested temporary spousal maintenance while the suit was pending as well as maintenance payments upon dissolution of the marriage.

By the hearing in December 2023, Appellant testified that he had added his new girlfriend to his car insurance and removed Appellee from his health insurance, which Appellee testified caused her financial hardship due to ongoing health issues.

Appellee testified that her only source of income was her children's entertainment business, Choo Choo Charlie, which operates in the mall, when the mall is open. She also owns a jewelry and crafts business with her oldest daughter, but the sale proceeds go to her granddaughter. Appellee testified that she worked only part-time at Choo Choo Charlie due to health issues and caring for her granddaughter and that she paid a "co-worker" to manage day-to-day operations in her absence.

Appellee lived in a home owned by Appellant's brother and was still living there when trial commenced in May 2025. Living with Appellee were the parties' twenty-one-year-old daughter and her newborn baby, and their twenty-eight-year-old daughter and granddaughter. Appellee and her daughters did not pay rent. However, Appellant's brother wrote a letter to the trial court in June 2025 expressing his desire to start collecting rent from Appellee.

Both parties introduced financial information detailing their earnings and expenses. Neither party owned real property or retirement accounts, and both had significant credit card debt. Appellee also testified that she owed the Internal Revenue Service (IRS) $7,000 in back taxes.

Appellee requested spousal maintenance payments in the amount of $2,500 per month for seven years. Appellant asked the trial court to deny Appellee's request to order spousal maintenance.

At the conclusion of trial, the trial court dissolved the marriage, observed that Appellee was eligible for a name change, and divided the property and debts. Appellee was given sole control and value of her businesses, Choo Choo Charlie and Pretty Little Crafters. She was also awarded her personal possessions such as her clothing, jewelry, and other personal effects, and the furniture in her possession, which was valued at around $2,000. In addition to the money she owed the IRS, Appellee was assigned debts totaling $10,200. Appellant was awarded the 2022 Toyota Camry that his daughter paid for and drives, his tools valued at $20,000, and

his bank accounts. As reflected in the divorce decree, Appellant's assigned debts amounted to $23,064. Finally, the trial court ordered Appellant to pay spousal maintenance in the amount of $1,000 per month for twenty-four months.

Appellant filed a notice of appeal and a pro se motion to stay enforcement of the spousal maintenance order. On October 9, 2025, the trial court heard testimony from both parties regarding their income and expenses, then denied Appellee's motion to stay the order pending appeal.

## II. *Spousal Maintenance: Governing Law & Standard of Review*

Appellant raises several challenges to the trial court's spousal maintenance award. In addition to contesting Appellee's eligibility, Appellant asserts that the trial court abused its discretion when it: (1) considered "an unsupported implication of 'domestic violence'"; (2) failed to consider Appellant's inability to pay; (3) calculated the amount using Appellant's gross annual income rather than his net monthly income, debt repayment, and living expenses; and (4) considered "incomplete or misleading testimony regarding Appellant's travel expenses."

### A. *Governing Law*

Spousal maintenance is "an award in a suit for dissolution of a marriage of periodic payments from the future income of one spouse for the support of the other spouse." FAM. § 8.001(1). It is "intended to provide temporary and rehabilitative support for a spouse whose ability to support herself has eroded over time while engaged in homemaking activities and whose capital assets are insufficient to provide support." *Mehta v. Mehta*, 716 S.W.3d 126, 133 (Tex. 2025) (quoting *Sherman v. Sherman*, 650 S.W.3d 897, 899 (Tex. App.—Fort Worth 2022, no pet.)); *In re Marriage of McCoy*, 567 S.W.3d 426, 428–29 (Tex. App.—Texarkana 2018, no pet.). "Its purpose is to ameliorate the 'very real hardships' that would otherwise exist as the result of a divorce." *Mehta*, 716 S.W.3d at 133 (quoting *Dalton v. Dalton*, 551 S.W.3d 126, 143 (Tex. 2018) (Lehrmann, J., concurring) (quoting

4

James W. Paulsen, *Remember the Alamo[ny]! The Unique Texas Ban on Permanent Alimony and the Development of Community Property Law*, 56 LAW & COMTEMP. PROBS. 7, 8 (1993))).

Section 8.051(2) of the Family Code permits a trial court to order maintenance only if the spouse seeking maintenance will lack sufficient property, including the spouse's separate property, on dissolution of the marriage to provide for the spouse's minimum reasonable needs, and the spouse seeking maintenance:

(A) is unable to earn sufficient income to provide for the spouse's minimum reasonable needs because of an incapacitating physical or mental disability;

(B) has been married to the other spouse for 10 years or longer and lacks the ability to earn sufficient income to provide for the spouse's minimum reasonable needs; or

(C) is the custodian of a child of the marriage of any age who requires substantial care and personal supervision because of a physical or mental disability that prevents the spouse from earning sufficient income to provide for the spouse's minimum reasonable needs.

FAM. § 8.051(2).[1] A spouse who proves eligibility for maintenance under Section 8.051(2)(B) must also rebut the presumption that maintenance is not warranted by demonstrating that he or she "has exercised diligence in: (1) earning sufficient income to provide for the spouse's minimum reasonable needs; or (2) developing the necessary skills to provide for the spouse's minimum reasonable needs during a period of separation and during the time the suit for the dissolution of the marriage is pending." *Id.* § 8.053(a).

---

[1]Section 8.051(1) requires proof that, either while the divorce suit was pending or within two years before suit was filed, the spouse from whom maintenance is sought was convicted of or received deferred adjudication for committing family violence, as defined by Section 71.004 of the Family Code, against the spouse seeking maintenance or the spouse's child. FAM. § 8.051(1). That subsection is inapplicable here, as is subsection 8.051(2)(C).

Once a trial court finds that a spouse is eligible to receive maintenance, the trial court "shall determine the nature, amount, duration, and manner of periodic payments by considering all relevant factors." FAM. § 8.052. Section 8.052 sets out a non-exhaustive list of eleven factors to consider, including "each spouse's ability to provide for that spouse's minimum reasonable needs independently, considering that spouse's financial resources on dissolution of the marriage" and "the age, employment history, earning ability, and physical and emotional condition of the spouse seeking maintenance." *Id.* § 8.052(1), (4). The Family Code further limits the amount and duration of maintenance awards based on the obligor spouse's average gross monthly income and the length of the marriage between the parties. *See id.* §§ 8.054–.055 (West Supp. 2025).

B. *Standard of Review*

"A trial court's decision to award spousal maintenance is reviewed for an abuse of discretion." *Mehta*, 716 S.W.3d at 131. "A [trial] court abuses its discretion if it acts arbitrarily or unreasonably or fails to analyze or apply the law correctly." *Id.* (citing *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011)). "While insufficiency of the evidence is not an independent ground on which to challenge a spousal-maintenance award, an award that is not supported by legally sufficient evidence may constitute an abuse of discretion." *Id.*; *see also In re J.Y.O.*, 709 S.W.3d 485, 497 n.92 (Tex. 2024) (noting that legal and factual insufficiency are relevant factors in assessing whether the trial court abused its discretion); *Henry v. Cox*, 520 S.W.3d 28, 34 (Tex. 2017) ("No abuse of discretion exists if some evidence reasonably supports the court's ruling.").

Evidence is legally sufficient if there is "more than a mere scintilla" to support a vital fact-finding, i.e., "the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). Reviewing courts must consider evidence in the light most

favorable to the judgment and its findings, "indulg[ing] every reasonable inference that would support it." *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

When, as here, the trial court does not enter findings of fact and conclusions of law following a nonjury trial, all fact findings necessary to support the trial court's judgment are implied. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). We will affirm the trial court's judgment if it can be upheld on any legal theory supported by the evidence. *Dowtech Specialty Contractors, Inc. v. City of Weinert*, 630 S.W.3d 206, 215 (Tex. App.—Eastland 2020, pet. denied) (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)); *see Diaz v. Diaz*, 350 S.W.3d 251, 256 (Tex. App.—San Antonio 2011, pet. denied) ("Under an abuse of discretion standard, we will not reverse the trial court's judgment if the trial court reaches a correct result even for a wrong reason.").

### III. *Discussion*

#### A. *Eligibility*

Appellant challenges Appellee's eligibility for spousal maintenance. He also contends that Appellee failed to rebut the presumption under Section 8.053. As the spouse seeking maintenance, Appellee bore the burden to establish the statutory requirements for eligibility, and, if applicable, overcome the presumption that maintenance is not warranted. *Boothe v. Boothe*, 681 S.W.3d 916, 927 (Tex. App.—Houston [14th Dist.] 2023, no pet.). That the parties were married for more than ten years is not in dispute. Considering the totality of the record evidence in the light most favorable to the trial court's judgment, we hold that Appellee presented sufficient evidence that she lacked sufficient property and earning ability to provide for her minimum reasonable needs. *See* FAM. § 8.051(2)(B); *Mehta*, 716 S.W.3d at 134–35. Additionally, the record supports the trial court's finding that Appellee exercised diligence in either earning sufficient income or developing the necessary skills to provide for her minimum reasonable needs. *See* FAM. § 8.053(a).

7

### 1. *Appellee's Property and Minimum Reasonable Needs*

The Family Code neither defines "minimum reasonable needs" nor expressly states what property should be considered as available to provide therefor. FAM. § 8.051; *Mehta*, 716 S.W.3d at 132. The term necessarily includes the basic essential needs such as food, utilities, and medical expenses. *See Mehta*, 716 S.W.3d at 132; *see also In re Marriage of Hale*, 975 S.W.2d 694, 698 (Tex. App.—Texarkana 1998, no pet.) ("The schedule of [the wife's] expenses, however, is just a generalized list and does not include other essential needs that everyone has, such as her portion of health premiums, uncovered medical expenses, drugs and medicines, clothing, and the like."). Trial courts generally have discretion to determine a spouse's minimum reasonable needs on a case-by-case, fact-specific basis, and may factor in all the spouse's available assets and expenses. *See Mehta*, 716 S.W.3d at 132, 134–35; *Martinez v. Martinez*, No. 02-21-00353-CV, 2022 WL 17986023, at *2 (Tex. App.—Fort Worth Dec. 29, 2022, no pet.) (mem. op.) ("[T]he minimum reasonable needs for a particular individual is a fact-specific determination that should be made by the trial court on a case-by-case basis."). Courts may also consider the liquidity of assets awarded and their ability to produce income. *Schafman v. Schafman*, No. 01-20-00231-CV, 2022 WL 962466, at *6 (Tex. App.—Houston [1st Dist.] Mar. 31, 2022, no pet.) (mem. op.). However, "the law does not require the spouse to spend down long-term assets, liquidate all available assets, or incur new debt simply to obtain job skills and meet short-term needs." *Id.*

Although an itemized list of monthly income and expenses is the most helpful evidence to establish eligibility, neither the Family Code nor precedent requires such exactitude. *Mehta*, 716 S.W.3d at 132, 135. When the quantitative evidence is incomplete or otherwise imperfect, a trial court can credit qualitative testimony about a spouse's inability to pay essential, basic living expenses to conclude that a

spouse seeking maintenance will lack sufficient property to provide for his or her minimum reasonable needs. *Id.* at 135.

Based on the final divorce decree, the property available "to provide for [Appellee's] minimum reasonable needs" included household furniture valued at $2,000, her personal possessions such as her clothing, jewelry, and other personal effects, and her business revenue. *See* FAM. § 8.051. At trial, Appellee introduced a financial information sheet, her tax returns for 2023 and 2024, and other documentation as evidence of her minimum reasonable needs. Her net business income in 2023 was $28,126, and an adjusted gross income of $26,139. Appellee reported a net business income of $9,391 for 2024, which reduced her average monthly income to $1,563.21. Neither party owned real property or retirement accounts, and there was no indication that Appellee had a savings account or significant funds in her checking account.

Appellee presented evidence that her minimum living expenses and personal debts were approximately $3,324 per month. This amount does not include rent, health insurance, a car payment, and factors in the contributions from her daughters. Despite Appellant's implication that Appellee had "time to go to concerts [and] go out drinking," her financial information sheet allotted just $250 per month for "dining out" and "entertainment." We did not incorporate that amount in assessing Appellee's minimum reasonable needs but cannot say the trial court would have abused its discretion by doing so. *See Czarkowski-Golejewski v. Wilson*, No. 07-24-00127-CV, 2025 WL 20566, at *2 (Tex. App.—Amarillo Jan. 2, 2025, no pet.) (mem. op.) (In determining minimum reasonable needs, "a reasonable trial court can[not] ignore the indisputable fact that people must physically nourish themselves to survive. They must eat.").

Appellee presented evidence that she incurred debt to pay her living expenses following the separation. Among other debts, Appellee will need to pay for a car

and her own health insurance without coverage through Appellant's employer. As previously noted, the trial court ordered Appellant, who was aware of Appellee's health issues when he removed her from his health insurance, to resume paying for her health insurance and her uninsured medical payment as temporary spousal support. *See Matter of Marriage of Cooper*, No. 06-22-00093-CV, 2023 WL 3766574, at \*3 (Tex. App.—Texarkana June 2, 2023, no pet.) (mem. op.) (considering the trial court's award of temporary spousal maintenance before trial as some evidence that the spouse lacked sufficient income to provide for her minimum reasonable needs). Considering Appellee's substantially lower income compared to her minimum expenses, the trial court did not abuse its discretion by finding that Appellee's income and assets are insufficient to meet her minimum reasonable needs. *See* FAM. § 8.051.

2. *Appellee's ability to earn sufficient income and exercise of diligence*

With respect to Appellee's lack of ability to earn sufficient income and diligence in that regard, the evidence demonstrated that the parties were married in 1995, and Appellee stopped attending school shortly thereafter. The highest level of education she completed was the eighth grade. At the time of trial, her only source of income was from her business, Choo Choo Charlie, which operates when the mall is open and at which she worked as much as thirty hours per week. While she does own and operate a jewelry and crafts business with her oldest daughter, she described it as a hobby and testified that the sale proceeds go to her granddaughter. Appellee worked part-time at Choo Choo Charlie—sometimes as much as thirty hours per week—and paid another person to cover the remaining hours.

Appellant contends that Appellee's decision to work part-time is a discretionary lifestyle choice that should preclude spousal maintenance. He claims that Appellee did not work full time during their marriage due to "[l]aziness," and that her current underemployment is intentional. He directs our attention to the trial

court's remarks at the close of evidence: "[Appellee] testified a week ago today that the only reason she did not work full time was because she was taking care of her grandbabies. . . . [Appellee] could work a full-time job, and chooses not to." However, a judge's comments at the conclusion of a bench trial are not a substitute for findings of fact and conclusions of law. *RSL Funding, LLC v. Metropolitan Life Ins. Co.*, No. 01-23-00190-CV, 2025 WL 920767, at *26 (Tex. App.—Houston [1st Dist.] Mar. 27, 2025, no pet.) (citing *In re W.E.R.*, 669 S.W.2d 716, 716 (Tex. 1984) (per curiam)); *see also In re Doe 10*, 78 S.W.3d 338, 340 n.2 (Tex. 2002) ("Oral comments from the bench are not written findings of fact."). "Statements made by a trial court outside of properly filed written findings and conclusions do not limit an appellate court's review." *RSL Funding*, 2025 WL 920767, at *26 (quoting *Tamuno Ifiesimama v. Haile*, 522 S.W.3d 675, 684 (Tex. App.—Houston [1st Dist.] 2017, pet. denied)). Consequently, we are not bound by the trial court's comments in our review of the record, which supports the spousal maintenance award. *See id.*

Appellee consistently maintained that, in addition to caring for her grandchildren, her health issues prevented her from working full time. Appellee testified at a hearing in December 2023 that she "always [felt] ill" and unwell because of her underactive thyroid. She described "feel[ing] ill most of the time" as including "pain," "body aches," and "migraine headaches." When trial commenced on May 8, 2025, Appellee cited her health and that she "was not doing well" as part of the reason for her inability to run her business during all of its hours of operation. She reiterated on the final day of trial, May 15, 2025, that her health issues, including osteoarthritis "[w]ith spurring in [her] left hip joint," affected her ability to meet her minimum reasonable needs.

Although the trial court observed that there was "no testimony . . . from an expert showing that [Appellee] is unable to work," the Family Code does not require medical evidence of an incapacitating physical or mental disability, and "testimony

11

on incapacity need not be limited to experts." *Kelly v. Kelly*, 634 S.W.3d 335, 367 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (quoting *Pickens v. Pickens*, 62 S.W.3d 212, 215 (Tex. App.—Dallas 2001, pet. denied)).  According to the medical records Appellee introduced, she sought medical treatment in 2024 and 2025 for pain in her pelvis, abdomen, chest, and lower back.  The records also showed that she was diagnosed with osteoarthritis and "[a]cute pancreatitis," and she had a "[l]eft adrenal mass."  Thus, even if the trial court did not find that Appellee suffered an incapacitating disability, Appellee's health issues were nevertheless a limitation on her ability to earn sufficient income to meet her minimum reasonable needs.  *See* Fam. § 8.051(2)(A), (B); *Slicker v. Slicker*, 464 S.W.3d 850, 863 (Tex. App.—Dallas 2015, no pet.) (considering wife's low self-esteem, high anxiety, and depression in assessing earning ability); *Matter of Marriage of Willis*, No. 06-25-00007-CV, 2025 WL 2433204, at *7–8 (Tex. App.—Texarkana Aug. 25, 2025, pet. filed) (mem. op.) (trial court's finding that ex-wife lacked ability to earn sufficient income supported by evidence of her deteriorating mental health, trouble sleeping, panic attacks, inability to concentrate and perform daily tasks); *Wilson*, 2025 WL 20566, at *3 (affirming maintenance award based on appellee's disability, no current income, that she was seeking higher education, and would "hav[e] to eventually maintain a house and car in Austin and buy her clothes and food").

Finally, even had Appellee worked full time, her income would still be insufficient to meet her minimum reasonable needs.  She paid her employee $15,730 in 2023 for the hours she was unable to cover, and $13,145 in 2024.  Had Appellee worked those hours rather than paying an employee, her average monthly income for 2023 and 2024 would have been, at the most, $2,766.33.  This falls below her minimum reasonable needs, especially considering that she will bear the responsibility for health insurance, a car payment, and car insurance after the divorce.  *See Cooper*, 2023 WL 3766574, at *3 (considering ex-wife's testimony

that she would have to pay for car insurance after the divorce in affirming spousal maintenance award). And while we do not account for a monthly rent payment, we cannot ignore Appellant's brother's June 2025 letter to the trial court in which he expressed his desire to collect rent from Appellee in the future. *See Wilson*, 2025 WL 20566, at *3.

The evidence therefore supports the trial court's finding that Appellee lacked both sufficient property and sufficient earning ability to meet her minimum reasonable needs. FAM. § 8.051(2)(B). For the same reasons, the trial court did not abuse its discretion by finding that Appellee presented evidence to rebut the presumption that maintenance was not warranted. *Id.* § 8.053(a); *See Diaz*, 350 S.W.3d at 254–55 (ex-wife rebutted presumption that maintenance was not warranted by demonstrating that she was running a janitorial business, caring for her children, and did not speak English). Having found that Appellee was eligible for spousal maintenance under Section 8.051(2)(B), we need not address her eligibility under Section 8.051(2)(A). *See* TEX. R. APP. P. 47.1.

B. *Amount & Duration*

Appellant likewise contests the amount of spousal maintenance awarded to Appellee, and the evidence on which the trial court relied. Section 8.052 sets out a non-exclusive list of eleven factors for courts to consider in determining the nature, amount, duration, and manner of maintenance payments:

(1) each spouse's ability to provide for that spouse's minimum reasonable needs independently, considering that spouse's financial resources on dissolution of the marriage;

(2) the education and employment skills of the spouses, the time necessary to acquire sufficient education or training to enable the spouse seeking maintenance to earn sufficient income, and the availability and feasibility of that education or training;

(3) the duration of the marriage;

13

(4) the age, employment history, earning ability, and physical and emotional condition of the spouse seeking maintenance;

(5) the effect on each spouse's ability to provide for that spouse's minimum reasonable needs while providing periodic child support payments or maintenance, if applicable;

(6) acts by either spouse resulting in excessive or abnormal expenditures or destruction, concealment, or fraudulent disposition of community property, joint tenancy, or other property held in common;

(7) the contribution by one spouse to the education, training, or increased earning power of the other spouse;

(8) the property brought to the marriage by either spouse;

(9) the contribution of a spouse as homemaker;

(10) marital misconduct, including adultery and cruel treatment, by either spouse during the marriage; and

(11) any history or pattern of family violence, as defined by Section 71.004.

FAM. § 8.052. The Family Code likewise limits the duration and amount of spousal maintenance. *Id.* § 8.054–.055. Here, because the parties were married to each other for twenty-eight years, the trial court could have ordered Appellant to pay spousal maintenance for up to seven years. *Id.* § 8.054. Moreover, the amount of monthly maintenance payments must not have exceeded twenty percent of Appellant's average monthly gross income. *Id.* § 8.055(a)(2).

Appellant argues that the trial court ignored his $42,000 debt repayment obligation, and his other monthly expenses when determining the amount of spousal maintenance. Appellant testified at trial that he earned a gross annual income of $100,000 in 2024, but his hourly wage increased in 2025. His checking and savings accounts had a combined total of $1,900 at the time of trial, and he was awarded his tools, valued at $20,000, in the divorce decree. Appellant declared in June 2025 that his monthly income was $5,660.28, and that his monthly expenses including spousal maintenance were $5,237.99.

At the post-trial hearing on Appellant's motion to stay enforcement of the maintenance order, he testified that he makes $5,000 per month. Attached to his motion were paystubs for four weeks, May 22 through June 18, 2025, that totaled $6,707.63 in gross pay. As of June 18, Appellant's gross income for the first twenty-four weeks of 2025 was $53,416.79, or an average of $8,902.79 every four weeks. When the trial court asked about his expenses, he purported to pay $600 a month to rent a mobile home, about $360 a month in utilities, $47 for internet, $140 for his cell phone, $377.89 for automobile insurance, and $228 for life insurance. His monthly expenses, without payments toward his credit card debt and spousal maintenance, total approximately $1,700. Factoring in the $1,000 maintenance payments, Appellant is left with around $2,300 per month to cover his debts and discretionary expenditures.

Even with Appellant's conflicting financial information, there is no scenario in which the spousal maintenance payment would affect his ability to meet his own minimum reasonable needs. *See* FAM. § 8.052(1), (5). In fact, Appellant agreed that he has "a little bit leftover" each month. Moreover, the trial court was permitted to conclude based on the evidence presented that Appellant earned an average gross monthly income of $5,000, and $1,000 monthly spousal maintenance award is within the discretionary bounds of the statutory limit. FAM. § 8.055(a)(2).

Appellant claimed that Appellee did not work full-time during their marriage. While Appellant attributed it to "[l]aziness," the trial court was permitted to infer that Appellee, age forty-six at the time of trial, was raising the parties' daughters for the majority of the marriage. Such a gap in employment undoubtedly affected Appellee's earning ability. *See* FAM. § 8.052(2), (4), (9). And evidence that Appellant had sufficient income to provide for himself, Appellee, and their daughters for the duration of the marriage permits the rational inference that he was

able to pay maintenance of $1,000 per month for two years. *See Cooper*, 2023 WL 3766574, at *4.

Appellant argues that the trial court improperly considered Appellee's testimony regarding Appellant's infidelity, post-separation spending, and domestic violence committed against her throughout the marriage. Appellant conceded that he physically abused Appellee by "hitting her and things of that nature" when they were younger. Appellant corroborated Appellee's testimony that the physical abuse stopped when their youngest daughter was three years old. He initially admitted to being "violent" toward Appellee "maybe three, four years" before trial, but retracted his concession and claimed that the abuse was only verbal. He then accused Appellee of abusing him during "a physical altercation" in 2023, and denied any other physical violence.

Appellant further corroborated Appellee's testimony that he had a secret checking account prior to their separation. According to Appellant, he had been dating his girlfriend since 2022, moved in with her in 2023, had spent up to $3,000 on her, and a few hundred dollars on her children. He admitted to traveling with his girlfriend multiple times while the suit was pending, including a trip to Kalahari Resort in Round Rock with her children. He has also bought his girlfriend gifts such as jewelry, among other things.

On this record, we find no abuse of discretion in the trial court's determination of the amount and duration of spousal maintenance. The maintenance awarded in this case is limited to two years, well below the statutorily permitted seven-year period. Furthermore, $1,000 per month is a modest sum relative to Appellee's monthly shortfall, the duration of the marriage, and Appellant's gross income and living expenses. Consequently, the trial court's award of spousal maintenance cannot be characterized as arbitrary, capricious, or unsupported by the record.

Accordingly, we overrule Appellant's issues in which he contests the amount and duration of spousal maintenance, and the evidence upon which the trial court relied.

## IV. *Lack of Name Change Provision*

In Appellant's final issue, he asserts that the trial court erroneously omitted Appellee's name change from the divorce decree. As Appellant correctly points out, the trial court stated that Appellee was eligible for a name change, but it was not reflected in the final decree of divorce.

Section 6.706 of the Family Code requires a trial court to "change the name of a party specifically requesting the change to a name previously used by the party unless the court states in the decree a reason for denying the change of name." FAM. § 6.706(a). A trial court's ruling on a name change is reviewed for an abuse of discretion. *In re Mayol*, 137 S.W.3d 103, 105 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

A judgment, absent issues tried by consent, must conform to the pleadings. TEX. R. CIV. P. 301 (the judgment of the court "shall conform to the pleadings"); *In re P.M.G.*, 405 S.W.3d 406, 417 (Tex. App.—Texarkana 2013, no pet.). Thus, in the absence of pleadings to support requested relief, such relief may not be granted. *P.M.G.*, 405 S.W.3d at 417 (citing *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983)); *Rodriguez v. Rodriguez*, No. 05-22-00056-CV, 2022 WL 17974631, at *3 (Tex. App.—Dallas Dec. 28, 2022, no pet.) (mem. op.).

We have found no pleading in the record in which Appellee requested a name change. The first mention of a name change was on May 15, 2025, the second day of trial. Appellee's attorney asked on direct examination: "Are you asking the [trial] [c]ourt for a name change?" Appellee stated that she was and provided her maiden name. Without a pleading requesting a name change, the trial court could not include

17

such unrequested relief in the judgment.  *See* TEX. R. CIV. P. 301; *Rodriguez*, 2022 WL 17974631, at *3.

We further observe that Appellant has not demonstrated how he was harmed by the lack of a provision in the final divorce decree changing his ex-wife's name. Appellant has therefore failed to carry his burden to show that the trial court's alleged error prevented him from properly presenting the case to this court or "probably caused the rendition of an improper judgment."  TEX. R. APP. P. 44.1(a).

Accordingly, we overrule Appellant's final issue.

## V. *This Court's Ruling*

We affirm the judgment of the trial court.  All pending motions in this proceeding are denied or otherwise overruled.


W. BRUCE WILLIAMS

JUSTICE


January 8, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.